# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 826 | **DATE** | 4/10/2003 |
| **CASE TITLE** | United States of America vs. Antoine Johnson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/17/03 at 1:00 P.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, Johnson's motion to suppress is denied. Because of the complexity of the issues that have had to be dealt with here, all of the elapsed time to and including the date of issuance of this opinion is excludable for Speedy trial Act purposes. This Action is set for a status hearing at 1:00 p.m. April 17, 2003 to discuss any necessary further proceedings, including the setting of the case for trial.(22-1) (XE)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 1 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 31 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/11/2003 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 CR 826 |
| | ) | |
| ANTOINE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Antoine Johnson ("Johnson") has filed a motion to suppress, as potential evidence in connection with counterfeiting charges brought against him and co-defendant Antonio Cooper ("Cooper"), a substantial number of items that he characterizes as "the direct and indirect products of an unlawful search." Because the challenged searches and consequent seizures were the ultimate result of two Markham police officers' suspicions about a parked car in a residential section of that community during the wee hours of a weekday morning on August 22, 2002, the justification for and the validity of the officers' conduct are hotly contested.

This Court has conducted an evidentiary hearing on the matter, a hearing that produced sharply disputed versions of the events involved, and the arresting officers' accounts have proved to be regrettably lacking in credibility. But because this Court's discrediting of those accounts has converted what would have been an easy denial of the motion to suppress (if the

officers' testimony had instead been found to be truthful) into a substantially more difficult case in legal terms, this opinion will first set the factual framework[1] and then turn to its legal consequences.

## Facts

Although the ultimate criminal charges here relate to the counterfeiting of United States currency, those illegal activities and illegal materials would not have been uncovered but for the sequence of events that hinges upon the officers' initial discovery of a few packets of marijuana in a parked vehicle that was occupied by Johnson in the driver's seat, Cooper in the front passenger's seat and a third individual -- Tillman Batchelor ("Batchelor") -- in the rear passenger seat. So the initial key to the potential success of the suppression motion lies in the validity of the searches that were undertaken incident to that discovery, for if that validity issue gets a negative answer it is possible that everything else may be barred in Wong Sun terms as the fruit of the poisoned tree.

Federal judges regularly instruct juries in criminal cases (and in civil cases as well) that law enforcement officers, when they testify, must be judged by the same standards as all other

---

[1] In the interest of completeness, this opinion will pretty much repeat this Court's oral statement of findings that it made after the evidentiary hearing had been completed and just before counsel then presented their oral arguments on certain of the disputed issues.

2

witnesses. Juries are also instructed carefully, in accordance with common sense, that any witness' self-interest must be taken into account in the evaluation of his or her testimony - and Fed.R.Evid. 609 teaches that a witness' prior criminal record is to be considered as bearing on his or her credibility. So it is not at all surprising when a swearing contest between (for example) an arresting officer and a convicted felon who offer up conflicting versions of events most frequently results in a resolution in favor of the officer's account, whether that resolution is made by a jury or by a judge (whose function as a factfinder is bound by the same rules).

But jurors are also regularly instructed, as stated in Seventh Circuit Federal Criminal Jury Instruction 1.04:[2]

> You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.
>
> In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inferences you make must be reasonable and must be based on the evidence in the case.

And here too a judge as factfinder follows the same rules. It is especially appropriate to bring that notion into play when some objective considerations help to resolve factual disputes, rather

---

[2] This is one of a set of instructions prepared by the Committee on Federal Jury Instructions of the Seventh Circuit that, although not officially approved by the Court of Appeals itself, are in most common use within the circuit.

than there being a need to choose between two otherwise unbuttressed testimonial versions. And this Court finds that to be the case here.

To begin with the hearing testimony of Markham Police Officer Patrick Righi-Barnard ("Barnard"), he described himself as having approached the parked car with Johnson occupying the driver's seat, so that Barnard stood outside of the driver's-side front door with his flashlight shining toward Johnson. Later, in an obvious effort to rehabilitate what sounded like a physical impossibility because light rays don't bend (except in the vast distances of space addressed by Einstein's theory of relativity and its progeny), later testimony was introduced by the government as to a group of photographs in which the camera lens was supposed to depict what the lenses of Barnard's eyes would have seen. But the testimony of United States Secret Service Agent Pamela Stute on that score was that she had placed the camera lens only an inch or two from the vertical plane of the front door window when those photographs were taken.

If that is thought of in terms of locating Barnard's eyes in the same position, it is wholly at odds with common sense. First and importantly, nothing that the officer himself testified to suggested that. Next, for Barnard to be positioned so that his eyes were that close to the window would require him to have held his flashlight in an extraordinarily awkward position, perhaps at

4

or behind his side, rather than conforming to any person's normal holding of a flashlight in front of himself or herself, while standing behind it to observe what the flashlight illuminates. And in that normal situation the human eye, like the camera lens if it were placed there instead of where Agent Stute placed it, could not have seen the two small packets of marijuana where Barnard said they were, to the left of Johnson's left foot immediately inside the car door.

Moreover, that normal and common sense view is further supported by considerations that obviously affect both an officer approaching a vehicle under the circumstances involved here and a person inside the vehicle who knows that the officer is approaching and who obviously wants to get any marijuana in his possession out of sight. Only a brief discussion is necessary to demonstrate such obviousness.

From the perspective of any officer approaching a vehicle with some suspicion, as was testified to be the situation here, the officer would be disinclined to place himself or herself in peril from any sudden effort at resistance or worse at a time when the officer was in a particularly awkward position and location in terms of being able to react and defend himself.[3]

---

[3] Notably and understandably, Barnard never testified that he put the flashlight or his hand or both into the car interior within easy reach of Johnson, who was then sitting in the driver's seat immediately inside the door.

That, as well as the normal practice of holding a flashlight out in front of oneself to be better able to focus on and see what the flashlight illuminates, would tend to place the officer's body some distance away from the outside of the car door -- certainly a foot or two.

So Barnard's version was at best suspect, and at worst not at all credible, even if looked at in a vacuum. But there is additional and important evidence in terms of the objective common sense that any factfinder is called upon to apply.

Look at the situation this time from Johnson's perspective, sitting as he was in a parked car with two other individuals shortly after midnight, with two nickel bags of marijuana on him. At that time Johnson saw a plainly marked squad car, with its alley lights operating, turn the corner a half block away onto the street where Johnson had parked the car.

As the squad car approached at a very slow rate of speed, Johnson would of course want to ditch the marijuana from view for obvious reasons. Is it at all reasonable for him to have placed the two marijuana bags on the floorboard where they would still be in plain view if anyone actually looked into the car, or would Johnson instead -- as he testified -- slide the bags <u>under</u> the front seat to place the marijuana out of sight? No special level of intelligence or skill needs to be ascribed to Johnson to answer that question -- just a simple sense of self-preservation.

So taking all of the evidence into account in terms of the same standards that every factfinding jury is instructed to apply, this Court has found Johnson's account of the circumstances involving Officer Barnard's finding of the marijuana -- <u>not</u> by observing it in plain view, but only by a physical search of the vehicle <u>after</u> the car's occupants were ordered out of the car -- to be credible. By definition Barnard's contrary version is not credible, for it is wholly at odds with common sense. Thus one of the pillars that might have supported a probable cause determination for the ensuing searches and seizures has crashed.

That then leads to consideration of the testimony of Officer Enrique Perez ("Perez") as to the circumstances under which he found the other two nickel bags of marijuana that were in Batchelor's possession. Because Batchelor did not testify at the hearing, in this instance it is not a matter of determining which of two directly competing versions is more believable (as was true in the Barnard-Johnson situation). There is however Johnson's testimony that Batchelor was patted down by Perez at about the same time that Johnson was patted down by Barnard, and Johnson's further testimony that Perez then found the other two bags of marijuana only when he searched Batchelor after ordering him out of the car (although Johnson did acknowledge that he did not see Perez as he first approached the car).

7

In this instance it becomes a question of evaluating the credibility of Perez' contrary testimony alone. And in candor, that testimony also strains credulity beyond the breaking point. According to Perez he approached the parked car from the rear passenger side, and when he arrived at the right rear car door he shone his flashlight into the car, with the light illuminating Batchelor's hands. Perez testified that he saw there -- mirabile dictu! -- two small plastic bags in plain view in Batchelor's open hand. When Perez then asked "What's that?" Batchelor assertedly responded "I got some weed." In Perez' version, that of course led to his opening of the rear door, to a patdown of Batchelor, to a few more questions and to placing Batchelor under arrest and into the squad car.

With that done, Perez testified that he then returned to the Johnson vehicle, where he turned his attention to Cooper in the front passenger seat. That also led to a patdown and consequently to the discovery of money that was suspected to be counterfeit (and that ultimately served as part of the gravamen of the present counterfeiting charges).

But it is simply not believable that someone in Batchelor's situation, again with a known police car having approached slowly and then having stopped, would be sitting with two bags of marijuana in his open hand -- with the bags in plain view -- when the officers approached the car. Every officer knows from his or

8

her training about the "plain view" doctrine, but that knowledge and training do <u>not</u> permit an officer to tailor his or her testimony to reshape (more accurately, to distort) the real facts to fit that doctrine. Officer Perez' testimony too must be and is rejected.

Once again, Johnson's testimony about seeing Perez' retrieval of Batchelor's marijuana bags only upon searching the latter after he had been removed from the car accords with common sense and ordinary human experience, in a way that Perez' testimony does not. It is far more probable that anyone in Batchelor's position would not have had the contraband in his open hand, rather than in some other location where it was not visible in plain view. Once more it is a source of regret that, for whatever reason, a sworn officer has not sworn truthfully.

So the end situation that comes out of the hearing testimony is this: Johnson and his car could at worst have been involved in two violations of the Illinois Motor Vehicle Law applicable to stationary vehicles. Yet according to Barnard, he placed Johnson under arrest for the possession of marijuana. Because Barnard's account of events has been thoroughly discredited, what remains is no more than an initially valid approach to the car in <u>Terry</u> terms (<u>Terry v. Ohio</u>, 392 U.S. 1 (1968)).

But nothing in the record suggests that an arrest would have been made for those minor traffic violations, a situation very

9

different from that dealt with by the United States Supreme Court in <u>Atwater v. Lago Vista</u>, 532 U.S. 318 (2001). Nor has anything been submitted by the government that would justify a kind of hypothetical reconstruction under which <u>if</u> the officers had made an arrest in vehicle code terms because of what they had observed (as they did not), they then would have been able to invoke probable cause to search the individuals or the vehicle or both -- either on the predicate of the purely hypothetical but nonexistent valid arrest or under the guise of an inventory search. To the contrary, it is universally known that such situations of nonmoving violations of traffic laws (such as illegal parking) do <u>not</u> ordinarily give rise to such arrest-and-search conduct on the part of officers.

<u>Inevitable Discovery?</u>

Because of the posture in which the evidentiary hearing had thus placed the matter -- with the testimony of the two officers being rejected because of a lack of credibility when measured against an objective yardstick -- this Court asked both sides' counsel to file additional submissions addressing the question of the doctrine of inevitable discovery, under which the suppression might be denied even if any legitimate underpinning for obtaining the challenged evidence had proved to be absent. Both counsel have done so.

Unfortunately the government's February 18, 2003

supplemental response begins with a distortion of the factual situation as found by this opinion. It is of course true that even minor traffic offenses may constitute probable cause for a stop and an arrest of the driver -- see, e.g., Whren v. United States, 517 U.S. 806 (1996), reaffirmed in Atwater; United States v. Childs, 277 F.3d 947, 953 (7th Cir. 2002); United States v. Cashman, 216 F.3d 582, 586-87 (7th Cir. 2000). And it is equally true, as Government Mem. 4 says (citing United States v. Sawyer, 224 F.3d 675, 678 (7th Cir. 2000)):

> When a police officer has made a lawful arrest of a person, the officer may conduct a full search of a arrested person in order to discover weapons and to preserve evidence that might be destroyed.

But the problem with that line of argument is that the arrest of Johnson was *not* lawful. Barnard testified that Johnson was placed under arrest for possession of marijuana (Tr. 18) and *not* for the stationary traffic violations. And again, as to those violations there was no testimony that they would have given rise to an arrest, rather than simply to the issuance of a traffic ticket, with Johnson and the other occupants then being permitted to go on about their business (cf., e.g., Valance v. Wisel, 110 F.3d 1269, 1276-77 (7th Cir. 1997)).

So any notion of inevitable discovery sought to be grounded on that false premise is unpersuasive. But the other doctrinal string to the government's role, even though perhaps frayed (at least in moral if not in legal terms), is not similarly broken.

11

Although Batchelor's essentially contemporaneous arrest was just as lacking in probable cause, Johnson has no standing to challenge that vicariously (see, e.g., <u>Minnesota v. Carter</u>, 525 U.S. 83, (1998); <u>United States v. Swift</u>, 220 F.3d 502, 510 (7th Cir. 2000)). Nor does Johnson have standing to challenge the search of Cooper, which first turned up the presence of counterfeit currency. And finally, the ensuing search of the vehicle (including its trunk) would thereby be rendered permissible, in part because the then-legitimized search of the vehicle's interior (flowing from Perez' obtaining of the marijuana bags from Batchelor and from the latter's statement that he had just bought them, thus creating probable cause for searching the other two occupants and the car itself) would then have turned up the two marijuana bags that had been stashed under the front driver's seat where Johnson had been sitting.

Nothing that has been submitted by Johnson's able counsel has suggested that once such legitimacy became attached (even though by an attenuated route) to evidence that was discovered in the earliest portion of the sequence, there would be any basis in law to support the breaking of the discovery-upon-discovery chain thereafter. So despite the valiant (and entirely proper) efforts by defense counsel to taint the proceedings as they were sought to be portrayed by Officers Barnard and Perez, the ultimate result is the failure of the motion.

## Conclusion

For the reasons stated in this memorandum opinion and order, Johnson's motion to suppress is denied. It is particularly troubling that the interaction of the cases in this area serves to reward (and thus to encourage) illegal conduct by law enforcement personnel -- but this Court's role is to adhere to that caselaw, not to decline to do so on policy grounds.

Because of the complexity of the issues that have had to be dealt with here, all of the elapsed time to and including the date of issuance of this opinion is excludable for Speedy Trial Act purposes. This action is set for a status hearing at 1:00 p.m. April 17, 2003 to discuss any necessary further proceedings, including the setting of the case for trial. Because that setting is purely procedural in nature, this Court will waive Johnson's presence if he chooses not to appear personally (rather than through counsel alone) at that time, although Johnson is of course entitled to be present if he wishes.

*[signature]*
Milton I. Shadur
Senior United States District Judge

Date: April 10, 2003